STATE OF MISSOURI at the Relation of THOMAS R. MADDEN, Sheriff of the City of St. Louis, Relator, v. EUGENE L. PADBERG, Judge of Circuit Court of the City of St. Louis.—101 S. W. (2d) 1003.

Court en Banc, February 19, 1937.

*Bondreau & Kramer* for relator.

*Ford W. Thompson* for respondent.

LEEDY, J.—This is an original proceeding in prohibition whereby relator, as sheriff of the city of St. Louis, seeks to prohibit respondent, Hon. Eugene L. Padberg, judge of the Circuit Court of the City of St. Louis, from going further with a proceeding pending before respondent against relator for contempt growing out of the manner in which the sheriff executed a certain writ of *fieri facias* issued upon a judgment in a condemnation suit in said court.

On August 17, 1936, a preliminary rule in prohibition was issued and served upon respondent, who, in due time, made return. Thereafter, and on November 10, 1936, relator, by leave of court, amended his application for the writ, and respondent filed his return to the preliminary rule on said amended application. These pleadings raised certain issues of fact, but neither reply nor motion for judgment on the pleadings was filed, nor was the appointment of a commissioner requested. However, we have come to the conclusion that it does sufficiently appear that the basic question, i. e., jurisdiction of respondent, as judge, does not rest upon contested facts, but is one of law, and so the case may be ruled notwithstanding the vagaries of the pleadings.

The facts out of which this controversy arises are lengthy and involved, but for present purposes may be stated to be substantially as follows: The city of St. Louis instituted a proceeding, under the city charter, for the condemnation of private property for public use, and in said proceeding a parcel of land belonging to Russell J. Egan, Elizabeth Egan and Patrick J. Egan, and others, defendants therein, was condemned. The commissioners fixed the amount of damages to the property in question at $11,290, and on July 22, 1935, made its award and report accordingly. Two days thereafter, the defendants, Egan, filed their exceptions, and on July 29, the city, by leave of court, deposited in the registry thereof, the amount of said award, and thereupon took possession of said property, and has ever since been in possession of the same. Exceptions of the Egans having been sustained, the matter was referred to the alternate members of the permanent condemnation commission, who, in a report filed December 10, 1935, fixed the damages at the sum of $15,000, to which the city filed exceptions. The city's exceptions were overruled on January 17, 1936, and on February 1, 1936, the Egans filed a motion "for payment of award or for vacation of said defendants' property," which motion was assigned to Division No. 15 for hearing before Hon. E. J. Satorius. Thereafter, and on May 11, 1936, said motion was sustained, as evidenced by the following entry:

"That the motion of defendants Egan is sustained, and the Court doth order and direct the plaintiff, the City of St. Louis, to pay into the registry of this Court on or before the 18th day of May, 1936, the sum of Fifteen Thousand Dollars ($15,000.00), being the amount

awarded by the duly appointed commissioners to said defendants Egan and approved by the Court as the damages suffered by said defendants by the taking and damaging of their property by the City of St. Louis in this condemnation proceeding; and the Court expressly finds that the plaintiff, The City of St. Louis, was granted and took possession of Defendants' land on July 29th, 1935, and has held possession thereof ever since that date, and is now in possession thereof.

"This court doth further find, and doth further order, adjudge, decree and direct that the plaintiff, the City of St. Louis, vacate and surrender the possession of said defendants' property, in the event that it shall have failed to pay into the court the said sum of Fifteen Thousand Dollars ($15,000.00) upon and not later than May 18th, 1936; and doth, upon such failure, expressly divest the City of St. Louis of all right, title or interest in said land of these defendants which it has thus far been permitted to occupy and which it has thus obtained."

On the same day, to-wit, May 11, 1937, the final judgment in said condemnation suit was entered, and in so far as it applies to the property of the Egans (referred to in said judgment as Item 28), it is as follows:

"Wherefore, it is considered, ordered and adjudged that the commissioners' report filed October 30, 1935 (with the exception of Item No. 28) and the commission's report filed December 10, 1935, be and the same are in all things approved, confirmed and held firm and effectual forever, as to said Item 28 and said approved award of $15,000.00 by the alternate commissioners' report filed December 10, 1935, for the actual damages sustained by Russell Egan, Elizabeth Egan, and Patrick J. Egan, husband of Elizabeth Egan, Charles A. Hanneken, trustee for Mary E. Brooks, Mary E. Brooks, Edmond Koeln, Collector of the City of St. Louis, Union Electric Light and Power Company, a corporation, Lubrite Refining Company, a Delaware corporation, lessee, Lutrite Refining Corporation, a Delaware corporation, lessee, Alma Williams, Hatti Young, Nellie Young, and Joseph J. Chaffee, the several parties owning or claiming an interest in and to the property described in the alternate condemnation commissioners' report filed December 10, 1935, to-wit:

" 'A parcel of land in City Block 3971, being Lot 1 having a front of 57 feet 2 inches on the north line of West Papin Street (60 feet wide) by a depth northwardly of 157 feet along the west line of said lot, and 156 feet along the east line of said lot, to south line of an alley 9 feet 11 inches wide, on which it has a width of 74 feet 3 inches; bounded on the west by Taylor Avenue (60 feet wide),'

"this Court does find, adjudge and decree that the City of St. Louis on the 29th day of July, 1935, did take possession of said property,

upon paying into court the amount awarded by said permanent condemnation commission, and has held possession thereof and is now in possession thereof; but that notwithstanding said exceptions to said award filed by said defendants Egans et al., thereto were sustained, and that this Court duly referred the assessment of damages sustained by said defendants Egans et al., to the alternate condemnation commission, who made an award thereon in the sum of $15,000, and filed a report thereof on December 10, 1935; and that the City of St. Louis did, on December 12, 1935, duly file its exceptions to said report, which upon a hearing were duly overruled by this Court, as above stated, nevertheless said City of St. Louis has not paid into court the amount of $15,000.00 so awarded.

"And this Court further finds that the City of St. Louis has, by and through its counsel of record, announced in open Court that notwithstanding the provisions of its Charter and the said orders made by this Court herein, that it declines to obey the said orders, and declines to pay the said award of $15,000.00, which has been duly approved by this Court, either into court for the use and benefit of said defendants Egan et al., or to said defendants themselves, and claims and intends to insist that it is entitled to remain in possession of said property, and that it will continue in possession, and that all that it is legally required to pay or tender upon entry of final judgment herein, in order to continue to hold possession of defendants' said property during the pendency of a threatened appeal from said final judgment, is the sum of $11,290.00, the amount of the vacated award made by said permanent condemnation commissioners, and which it paid into court on July 29, 1935; and that it intends, notwithstanding this Court's approval of said award of $15,000.00, to hold possession of said property without paying said approval award, and without satisfying the final judgment of $15,000.00, and to prosecute an appeal from a final judgment even when entered.

"Wherefore, this Court doth find and doth order, adjudge and decree, that the plaintiff, City of St. Louis, by reason of its said disclosed intention and refusal to pay into Court the amount of said approved award of $15,000.00, has placed itself in the position of abusing the process of this Court, and of refusing to obey the terms of its Charter under which it instituted this suit and obtained all proper orders of this Court made thereunder, and obtained possession of said defendants' said property; and this Court doth order, direct, adjudge and decree that the plaintiff, City of St. Louis, vacate and surrender the peaceable possession of said defendants' said property, of which it so obtained possession under the process of this Court, upon and in the event that it shall have persisted in its refusal to respect the orders of this Court, and shall have failed to pay into this Court the sum of $15,000.00, together with interest thereon at

six per cent per annum that has accrued since July 29th, 1935, when it took possession of said property of said defendants, on not later than May 18, 1936, at 10 o'clock A. M. of said day; and doth upon such failure to make such payment expressly divest the City of St. Louis of all right, title or interest in said land and property of said defendants, which it has thus far been permitted to occupy, and which it has thus obtained; and doth upon such failure to make said payment expressly restrain and enjoin said City of St. Louis, its agents and servants, from in any manner, directly or indirectly, interfering with the ownership and peaceful possession of said property of said defendants after May 18, 1936, at 10 o'clock A. M. of said day.''

On May 15, the city filed its motion for a new trial, and on May 25, the sum of $15,000, not having been paid into court, as directed by the order above set out, the Egans filed a motion to strike from the files the city's motion for a new trial, and to order a special execution on the judgment. The motion just referred to was sustained on July 7, 1936, by an order made by Judge Sartorius, the pertinent part of which is as follows: ''doth find that the plaintiff has failed to perform the final judgment and has failed to either pay into court the amount of said judgment, or to vacate the property of the defendants Egan, and the Court doth sustain said motion filed by said defendants on May 25th, 1936, and order said motion for new trial stricken from the docket in accordance with the motion filed by defendants Egan, and doth order and direct that a special execution issue forthwith for the amount of said judgment and that it be made returnable forthwith.''

That order is the subject of further litigation pending this court and concurrently decided herewith. [See State ex rel. City of St. Louis v. Sartorius, J., et al., 340 Mo. 832, 102 S. W. (2d) 890.]

Pursuant to said order, there was issued, on July 8, what is denominated throughout the record herein as a ''special execution,'' in words and figures, as follows:

''City of St. Louis Sct.

''The State of Missouri.

''To the Sheriff of the City of St. Louis—

''Greetings:

''Whereas on the 11th day of May, Nineteen Hundred and Thirty-six, at our Circuit Court, City of St. Louis, before one of the Judges thereof, a final judgment was rendered in favor of various persons against the plaintiff City of St. Louis, in cause No. 207,079, Series 'B' of the causes in said Court, wherein The City of St. Louis, a Municipal Corporation, was plaintiff, and the Central Institute for Deaf, a corporation, and others were defendants, among which is the judgment in favor of defendants, Russell Egan, Elizabeth Egan and

Patrick J. Egan, which judgment is in words and figures as follows, to-wit:

"That the actual damages sustained by Russell Egan, Elizabeth Egan, Patrick J. Egan, husband of Elizabeth Egan, Charles A. Hanneken, Trustee for Mary E. Bocka, Mary E. Bocka, Edmund Koeln, Collector of the City of St. Louis, Union Electric Light and Power Company, a Delaware Corporation, Lessee, Lubrite Refining Corporation; Lubrite Refining Company, a Delaware Corporation, Lessee, Lubrite Refining Corporation, a Delaware Corporation, Assignee of Lubrite Refining Company, Lessee, Lubrite Refining Corporation, a Delaware Corporation, Lessee, Alma Williams, Hattie Young, Willie Young, and Joseph J. Chappee, the several parties owning or claiming an interest in and to the property described in award No. 28 of the commissioners' report filed October 30, 1935, and the same property being described in the Alternate Condemnation Commission's report filed December 10, 1935, to-wit:

" 'A parcel of land in City Block 3971, being Lot 1, having a front of 58 feet, 2 inches, on the north line of West Papin Street (60 feet wide), by a depth northwardly of 157 feet along the west line of said lot, and 156 feet along the east line of said lot to the south line of an alley (9 feet, 11 inches wide), on which it has a width of 74 feet, 3 inches; bounded on the west by Taylor Avenue (60 feet wide).'
"are $15,000.00, to which sum said parties are entitled as aforesaid; the 7th day of July, 1936, that the defendants, Russell Egan, Elizabeth Egan and Patrick J. Egan, have a special execution thereon against said plaintiff, The City of St. Louis, a Municipal Corporation, for the amount of said judgment or the sum of $15,000.00, together with interest thereon a 6% per annum that has accrued since July 29th, 1935;

"These are, therefore, to command you, that of the goods and chattels and real estate of the said City of St. Louis and forthwith cause to be made the sum of $15,000.00 with interest as aforesaid, and costs, and that you have the same before the Judges of said Court forthwith to satisfy the judgment, interest and costs aforesaid, and that you certify how you have executed this writ.

"Witness, H. Sam Priest, Clerk of said Court, with the seal thereof hereunto affixed, at office in the City of St. Louis, this 8th day of July, Nineteen Hundred and thirty-six.

"(Signed) H. SAM PRIEST,
"(Seal) Clerk, Circuit Court.
"JAM"

Such instrument was delivered to relator, the sheriff, at or about eleven-seven A. M., on July 9. On July 10, at four forty-five P. M., the Egans filed a motion for citation and order on the sheriff to execute said writ of execution, "and to levy the same in accordance with the commands thereof." The respondent judge entered an

order that relator be served with a copy of said motion, and that he be notified to appear in Division No. 1 of said court at ten o'clock, A. M., on Friday, July 10, 1936, "and show cause, if any he has, for his failure to levy the execution described and referred to in said motion, and to fail not at his peril." Relator was "thereafter" served as in the order directed, but the date and time of such service does not appear. In any event, the sheriff made return to the writ, dated "7/10/36," but whether such return was made and filed before or after the service of the order to show cause nowhere appears in the record. The return reads as follows:

"No goods, chattels or real estate not in active use found in the City of St. Louis, Mo. belonging to the within named plaintiff (liable) whereon to levy this writ forthwith and take the debt and costs of any part thereof, after due and diligent search and inquiry.

"(Signed) THOS. R. MADDEN, Sheriff
"By A. J. MURRAY, Deputy.
"Ret. 7/10/36"

The hearing on the citation or order to show cause was continued at the request of the Egans to July 13, on which date relator appeared specially, and filed a motion attacking the jurisdiction of Division No. 1, which was overruled, but the cause was transferred to Division No. 18 for immediate hearing before respondent judge, as judge of Division No. 18. There relator again sought to raise the question of the jurisdiction of Division No. 18, on the ground asserted that as Division No. 1 was without jurisdiction, it could confer none on Division No. 18 by transferring the cause to Division No. 18. This objection was overruled, and relator then filed his return to the order to show cause and thereafter filed an amended return thereto. Counsel for the Egans presented witnesses to be sworn and testify. Whereupon relator filed a motion for judgment on the pleadings. Said motion was overruled, and, "relator then orally announced to the court that he declined to participate further in the proceedings," but moved the court to continue the cause to afford him time within which to apply for a writ of prohibition, which was denied. Evidence was being introduced on the citation, or order to show cause, when relator applied for this court's preliminary rule in prohibition, which issued.

I. Respondent cites no authorities in support of proposition that prohibition is not a proper remedy in contempt cases. The rule in this jurisdiction is that in a proper case, such remedy is available. [State ex rel. Thompson v. Rutledge, J., 332 Mo. 603, 59 S. W. (2d) 641; State ex rel. v. Cockrell, J., 280 Mo. 269, 217 S. W. 524.]

II. The *validity* of the judgment confirming the award of the commissioners rendered May 11, 1936, is not an issue in this

proceeding. It is not questioned directly or indirectly, but on the contrary the parties treat it as being, in all respects, regular, valid, and binding. But, not every judgment carries with it the right to issue execution (15 R. C. L., p. 794) and we think there is much force in the contention of relator that because of the self-enforcing nature of the judgment, a writ of *fieri facias,* as on a money judgment, would not lie. It would seem that the so-called judgment is, not only in substance, but in form as well, a decree approving an award of commissioners, divesting title out of the city upon the happening of a contingency (which, on the date of the execution, had already occurred, i. e., the city failed to pay into court the sum of $15,000 by the date specified), and perpetuating an injunction. True, such an adjudication would determine the issues in this case, but our decision will not rest on that ground; particularly in view of the provision of the decree expressly reserving into the court jurisdiction "to render such other and further relief as may seem meet and just, to fully and adequately indemnify said defendants." And so, for our purposes it will be assumed that an execution might properly issue on the judgment for the amount of the award of damages provided thereby. While the execution in question was ordered issued as, and called a "special execution," we perceive in its makeup none of the attributes of a special execution, save only in point of time when returnable. But that characteristic is not, and cannot be the distinction between general and special executions. In that regard, it may be said that the distinction to be drawn between such writs is that a special execution specifies the property to be sold, and follows the judgment with respect to distribution of the proceeds. [Lord v. Johnson, 102 Mo. 680, 15 S. W. 73.] The command of the writ in question follows literally the form prescribed by statute (Sec. 1153, R. S. 1929; Sec. 1153, Mo. Stat. Ann., p. 1418) for a *general fieri facias,* and we have no hesitancy in pronouncing it a general execution within the purview of that statute.

By Section 1155, Revised Statutes 1929 (Sec. 1115, Mo. Stat. Ann., p. 1420) it is provided: "Every execution issued from any court of record shall be made returnable to the next succeeding term. unless the plaintiff, or person to whose use the suit was brought, shall otherwise direct; then it shall be the duty of the clerk issuing the same to make it returnable to the second succeeding term." In view of the holding that the writ in question is a general execution, we need not consider respondent's contention that, notwithstanding the broad language of the section making *"every"* execution returnable as therein provided, such statute is inapplicable to special executions. The power of sheriffs and their deputies to serve and execute writs and precepts directed and committed to them is statutory, and unless conferred by the statute expressly or by fair implication does not

exist. So, too, the mode in which writs and precepts shall be served and executed is regulated by statute and unless substantially conformable thereto, the doings of the officer are invalid. [24 R. C. L., p. 917.] It is true, as respondent contends, that this court has, on occasion, held that an execution returnable out of term is merely erroneous. [Heather v. City of Palmyra, 311 Mo. 32, 276 S. W. 872; Estes v. Long, 71 Mo. 605.] But those cases dealt with mere clerical misprisions of the clerk, and we have been cited to no case, nor have we been able to find any, sanctioning the command of a writ of execution that is to be returnable forthwith.

 Respondent takes the position that the sheriff, by failing to make a levy, despite the return made by him, became amenable to that provision of Section 1864, and Revised Statutes 1929 (Sec. 1864, Mo. Stat. Ann., p. 2571), which says that "every court of record shall have power to punish as for criminal contempt persons guilty of . . . third, willful disobedience of any process or order *lawfully* issued or made by it." (Italics ours.) To give validity to an execution returnable forthwith in conformity with an order of court specifically so directing, would be to destroy by construction not only the letter, but the substance and life of the statute. We hold the execution void on its face. The execution being a nullity, the predicate of the charge of contempt—that is, the sheriff's mode of executing it—falls with the execution. Besides, willful disobedience to a lawful mandate of the court implies bad faith, and not simply a mistake or error of judgment. If a party to an action is injured by a mistake of the sheriff in the discharge of an official duty, he can hold him and his sureties liable in damages, but cannot proceed against him as for a contempt. [Second National Bank v. Dunn (N. Y.), 63 How. Pr. 434.] The preliminary rule in prohibition is made absolute. All concur.