W. H. POWELL LUMBER COMPANY, INC., and Vessell & Bahr Furniture Co., Inc., Plaintiffs-Appellants,

v.

FEDERAL LAND BANK ASSOCIATION OF MOUNTAIN GROVE–ROLLA, Defendant-Respondent,

and

Hugh W. Ford and Saundra E. Ford, Defendants.

Nos. 10386 and 10387.

Missouri Court of Appeals, Springfield District.

Jan. 26, 1978.

TITUS, Judge.

Plaintiffs (W. H. Powell Lumber Company, Inc. and Vessell & Bahr Furniture Co., Inc.) appeal from the order sustaining the motion of Federal Land Bank Association of Mountain Grove-Rolla (hereinafter "defendant") to quash plaintiffs' special execution under a mechanic's lien judgment. Defendant appeals from the court's order overruling its motion to quash general execution under the same mechanic's lien judgment.

No trial was conducted. Consequently, the transcript on appeal, as it mutually concerns the instant parties, consists only of pleadings, orders, a judgment and the notices of appeal. Therefore, those portions of the transcript and briefs which repose in disputed or not-agreed-to areas will be ignored in our recastings because pleadings do not prove themselves [*Fulton v. Fulton,* 528 S.W.2d 146, 157 (Mo.App.1975)] and proof cannot be bottomed on assertions printed in briefs. *Hendrix v. State,* 495 S.W.2d 457, 460 (Mo.App.1973).

*Chronology*

August 30, 1973—Two deeds describing the real estate in question were recorded. One, a warranty deed dated August 30, 1973, conveyed the fee title to the property to Hugh W. and Saundra E. Ford (hereinafter "the Fords"). The second was a deed of trust dated August 27, 1973, executed by the Fords which named Federal Land Bank of St. Louis (hereinafter "FLB-StL") the cestui que trust.

March 27, 1974—Plaintiffs filed their separate notices of mechanic's liens "for work and labor done and materials furnished by [the plaintiffs] under contract with [the Fords], owner." Plaintiff lumber company stated the "first item of said account was furnished on June 20, 1973," which would have been two months before the Fords acquired title to the real estate. Both notices acknowledged the existence of the deed of trust executed by the Fords to a named trustee for the benefit of FLB-StL, supra.

Dewey A. Routh, Routh, Thomas & Birdsong, Rolla, for plaintiffs-appellants.

Charles T. Smallwood, Williams & Smallwood, Rolla, for defendant-respondent.

April 5, 1974—A warranty deed (dated the same day) was recorded which involved the subject real estate. The deed named the Fords as grantors and the defendant as grantee.

September 5, 1974—Plaintiffs filed separate petitions to enforce their claimed mechanic's liens. The Fords and the defendant were designated as parties defendant. FLB-StL was not made a party. While the petitions acknowledged the April 5, 1974, conveyance by the Fords to the defendant, supra, no mention was made of the August 1973 deed of trust given by the Fords for the benefit of FLB-StL. Each petition prayed judgment for the sum (with interest) allegedly due each plaintiff "and that the same may be declared a lien against the property above described." Defendant was personally served and answered. The Fords were notified by publication but never answered and were ultimately declared to be in default.

May 27, 1975—Without ascertaining, "by a fair trial in the usual way, the amount of the indebtedness for which the lien is prosecuted" (§ 429.210 and Rule 101.06),[1] judgments were entered as follows: " . . . by Agreement of plaintiff[s] and [defendant], judgment is entered for the plaintiff[s] and against [defendant] and for the plaintiff[s] and against [the Fords] in the sum [claimed by each in the petitions], together with interest . . . . Cost to be taxed to [defendant and the Fords]. This judgment declared to be a lien against the real property described in plaintiff[s'] Petition filed herein." [On November 14, 1975, an amended judgment was entered by the court in the same language, save that the amended judgment described the property charged with the lien as required by § 429.230 and Rule 101.08. See Rules 74.-30(10) and 74.31 relative to curing judgment imperfection of this character by amendment].

July 1, 1975—FLB-StL caused a foreclosure sale of the involved real estate under the terms of the deed of trust executed by the Fords, supra, and became the purchaser thereof.

January 27, 1976—Plaintiffs filed "Special Execution Under Mechanic's Lien" commanding the sheriff "that all the goods, chattels and real estate of [the defendant] you cause to be made the sum aforesaid, together with interest thereon . . ., and if no sufficient property of said debtor can be found to satisfy said judgment . . ., then that you cause the same . . . to be made out of the buildings located on said real estate owned and claimed as aforesaid . . . . "

February 24, 1976—Defendant filed "Motion to Quash Special Execution" which motion was sustained on March 2, 1976.

March 12, 1976—Plaintiffs filed "General Execution" against "the Goods and Chattels and Real Estate of the" defendant.

March 19, 1976—Defendant filed "Motion to Quash General Execution" which was denied on May 14, 1976.

As above noted, the consolidated appeals are (1) by plaintiffs from the order quashing special execution, and (2) by defendant from the order denying its motion to quash general execution.

### The Executions

If an execution is unauthorized by the judgment, a motion to quash it is the proper remedy. *Weniger v. Weniger,* 32 S.W.2d 773, 774[2] (Mo.App.1930). Ergo, to determine if the court erred in quashing the special execution (as contended by plaintiffs) or erred in not quashing the general execution (as claimed by defendant), we first must determine what kind of judgment we have or purport to have.

There is no doubting but that plaintiffs sought to avail themselves of the benefits

---

1. References herein to statutes and rules are to Missouri Revised Statutes, V.A.M.S., and to Missouri Supreme Court Rules, V.A.M.R.

bestowed by the laws and rules relating to mechanics' and materialmen's liens. §§ 429.010–429.340; Rules 101.01–101.21. Had plaintiffs prevailed upon personal service of the debtors-owners (the Fords), they would have been entitled to bipartite judgments. § 429.240; Rule 101.09. The first part of the judgments would have been in personam against the debtors-owners "as in ordinary cases;" the second part, to have been operative only if the property of the debtors-owners was insufficient to pay the judgments, would have been in rem to be levied of the property charged with the liens. *Dill v. Poindexter Tile Company*, 451 S.W.2d 365, 373 (Mo.App.1970). The second part of such judgments would be of concern only in those instances where the debtors are not the present owners of the property. *Poore v. International Paper Company*, 455 S.W.2d 13, 16 (Mo.App.1970). However, plaintiffs, in any event, would not be entitled to a personal judgment for the amounts allegedly due them for materials furnished and labor performed under their contracts against anyone other than the Fords, the debtors-owners [*Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 592 (Mo. 1962)], and they would not be entitled to a personal judgment against defendant. *Lowry-Miller Lumber Co. v. Dean*, 226 Mo. App. 783, 786, 47 S.W.2d 164, 166[6] (1932). Nonetheless, as previously observed, personal service was not obtained upon the debtors-owners (the Fords). They were only notified of the causes by publication which will not support personal judgments against them. *Trout's Investments, Inc. v. Davis*, 482 S.W.2d 510, 518[6] (Mo.App.1972). In fine, there was no party to the causes in question against whom plaintiffs were entitled to obtain personal judgments.

■ When we view judgments, they "should be construed ' "in light of the situation of the court, what was before it, and the accompanying circumstances" ' . . ., and its meaning should be determined in the light of the character and object of the proceeding culminating in the judgment. . . . We should examine and consider the judgment in its entirety, and we should be concerned with the 'sense,' rather than

the 'abstract force,' of the language employed. It may be presumed that the court intended to render a valid, not a void, judgment; and, where it is reasonably possible to do so, such construction should be adopted as will give force and effect to the judgment, will make it serviceable instead of useless, and will support rather than destroy it." *Jeans v. Jeans*, 314 S.W.2d 922, 925[5–7] (Mo.App.1958).

■ In this instance the suits before the court sought to obtain for the plaintiffs the benefits of the laws relating to liens of mechanics and materialmen. The debtors (the Fords) named in the action had not been personally served and their notification by publication would not support personal judgments against them. The only other party named in the causes, the defendant, was not a debtor of the plaintiffs. Valid personal judgments could not be rendered against the defendant because it was simply the grantee of the real estate after the work and labor done and the materials furnished by the plaintiffs under contracts with the Fords had been completed. Hence, with no party defendant being subject to personal liability and with the view that the court intended to render valid judgments, the recitation that "judgment is entered for the plaintiff[s] and against [defendant] and for the plaintiff[s] and against [the Fords]" for stated sums of money must be considered as neutral or ineffective and the only portion of the judgments to which a claim of valid vitality could repose would be those portions declaring them "to be a lien against the real property", thereby authorizing only a writ of execution via "special fieri facias" (§ 429.250; Rule 101.10).

■ A fieri facias is "the ordinary writ for the seizure and sale of the property of a judgment debtor under execution." 30 Am. Jur.2d, Executions § 28, p. 461. "A *special execution* is one that directs a levy on some special property, while a general execution is one that makes no such requirement but demands a levy on the debtor's property generally." 33 C.J.S. Executions § 12, at p. 146; *State ex rel. Madden v. Padberg*, 340

Mo. 667, 674, 101 S.W.2d 1003, 1008[3] (banc 1937). In this case the "Special Execution Under Mechanic's Lien" which issued was a hybrid writ. The first portion purported to authorize an execution against the defendant's property generally as if it was predicated upon an in personam judgment, while the second part would have activated a special execution against specified real estate if the general execution proved unfruitful. Since, as previously observed, defendant was not personally liable for the debts, nor lawfully subject to personal judgment, the general execution portion of the so-called special execution was unwarranted and unauthorized, and the trial court was correct in quashing the special execution. It is self-evident from what has just been written that the trial court erred in failing and refusing to quash the general execution against "the Goods and Chattels and Real Estate of the" defendant.

■ Albeit we have disposed of the specific questions necessarily germane to the two appeals, we have made no effort to consider the "Points and Authorities" (which should properly be labeled "Points Relied On") appearing in the brief of plaintiffs as appellants. This for the simple reason that they are penned heedless of the mandates of Rule 84.04(d). Without recasting the "points", it suffices to say that before the intent of any one of them could be understood or ascertained it would be necessary to analyze them in the light of a reading of the transcript and argument portion of the brief, and that we are not required to do. *Dors v. Wulff*, 522 S.W.2d 325, 327[5] (Mo.App.1975). Simply stating what alleged errors are, without also stating wherein and why they are errors, neither sates the requirements of Rule 84.04(d) nor preserves anything for appellate consideration. *Lee v. Rolla Speedway, Inc.*, 539 S.W.2d 627, 629–630[4] (Mo.App.1976).

The trial court's quashing of the special execution is sustained. Its ruling refusing to quash the general execution is reversed.

It is so ordered.

All concur.